FILED

2018 AUG 22  PM 4: 46

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FIRST SUPERSEDING INDICTMENT** |
| Plaintiff, | ) | |
| | ) | JUDGE JACK ZOUHARY |
| v. | ) | CASE NO.  3:18 CR 225 |
| JARED J. DAVIS, | ) | Title 18, Sections 2, 1343, 1349, 1512, 1956, and 1957, United States Code; Title 26, Section 7201, United States Code. |
| Defendant. | ) | |

## GENERAL ALLEGATIONS

At all times relevant to this indictment:

1.     Defendant JARED J. DAVIS was a United States citizen residing primarily in Columbus, Ohio.  He owned various businesses headquartered in Sandusky, Ohio, including several real estate ventures, and Erie Marketing, LLC, a limited liability company having its principal place of business in Sandusky, Ohio.

2.     Through Erie Marketing, Defendant, together with other persons and entities known and unknown to the Grand Jury, ran a fraudulent binary options investment scheme in the Northern District of Ohio, Western Division and elsewhere using various tradenames, including

ORIGINAL

OptionMint, OptionKing, and OptionQueen.  In all, Defendant defrauded victims of over $10 million.

3.      A "binary option" is a concept in which an investor seeks a payout based on the future price of a given security, commodity, or foreign currency (known as the "asset").  The investor chooses whether the asset's price will be above or below a certain price at a given time.  Binary options are sometimes traded on regulated exchanges that match two investors, one who believes the asset will be above the chose price and one who believes it will be below the chosen price. The investor whose prediction is correct will make money; the other investor will lose money. The binary option exchange makes a commission but otherwise takes no interest in the outcome of the trade.

4.      In the United States, the Commodity Futures Trading Commission and/or the Securities and Exchange Commission have regulatory oversight over binary options trading, including registration and licensing.  Defendant's binary options businesses were neither registered with nor licensed by, either of these commissions.

5.      Defendant's binary option scheme operated much differently from regulated exchanges. Defendant, acting as a binary options "broker," did not connect his investors to a legitimate binary options exchange that would match investors who chose different binary option outcomes. Instead, Defendant, similar to a casino or sports book, took the opposing position on each trade. Thus, Defendant only made money when his investors lost their money, providing a built-in incentive to employ manipulative and deceptive practices.  Those practices included the following false and fraudulent pretenses, representations, and promises.

6.      *Parties to the Trade.*  By portraying the scheme as an investment in binary options, Defendant led victims to believe that they were investing money on a legitimate binary options

exchange where they would be matched with other investors taking the opposite side of the binary option trade.  Defendant, however, failed to disclose that victims were not matched with other individual investors who took the opposite side of the transaction but were instead matched with Defendant, who only made money when the victims lost money.

7.     *"Risk Management."*  Defendant falsely represented to victims that their binary options trades would be based on true market conditions without telling them Defendant could, and in fact did, manipulate trading conditions.

8.     Defendant used fraudulent Internet-based trading platforms as a means of allowing victims access to their accounts and offering them the ability to make trades.  Upon making a deposit in Defendant's scheme, victims were given an account on one of these platforms.

9.     Defendant used SpotOption, Hello Binary, and Panda Trading Systems as the Internet-based trading platforms for his scheme.  These platforms were fraudulent, as they were never designed to operate as legitimate binary options exchanges, matching individual investors on opposite sides of a trade.  Instead, the platforms were designed to allow "brokers," like Defendant, to take the opposite side of each trade.  Defendant paid the owners of these platforms to use them in his scheme.

10.    SpotOption, Hello Binary, and other platforms also maintained a fraudulent functionality called "risk management" that allowed brokers, like Defendant, to manipulate a specific victim's chances of winning or losing trades from his account.  If a victim had a history of trading success, SpotOption and Hello Binary could use this "risk management" feature to manipulate the starting prices of the trade and increase the chances of an investment loss for the victim. "Risk management" could also increase the chances of winning, thus encouraging a victim to

3

deposit more money under a false sense of success.  Defendant never disclosed "risk management" to victims.

11.     Defendant and his employees frequently communicated with SpotOption and Hello Binary employees about "risk management."  For example, on June 19, 2014, an employee for Defendant, complained to Defendant in an e-mail about Hello Binary's risk management feature too aggressively defeating investor trades.  Defendant's employee wrote that "[w]ith risk on auto, the system is crushing me . . . . We have a client that is up on us right now and the system has been crushing him on auto . . . . He has lost 12 in a row . . . ."

12.     Defendant, using his "jared@davisinvestment.com" Gmail account, forwarded the complaint to a Hello Binary employee.  Defendant further wrote to the Hello Binary employee:

> Guys, **This is urgent for us**.  We are going a bit overboard on the auto risk, the traders can easily see that they are being scalped on the entry and have no chance to win.  How can we adjust this so they have a fighting chance?  We can send over a ton of larger depositors but not if they all feel like they are being robbed outright.

13.     The Hello Binary employee responded directly to Defendant by saying " . . . . If you want a concrete number of traders to win or someone in particular you can tell it to [another Hello Binary employee] and he will take care of adjusting the parameters.  Nonetheless keep in mind that whatever the traders win is what the broker loses so just try to keep a balance so we don't have ugly surprises."

14.     More frequently, Defendant and his employees communicated with SpotOption to use "risk management" as a way of increasing individual investor losses.  These e-mail communications were transmitted by wire between the Northern District of Ohio, Western Division and e-mail servers and recipients located outside the state of Ohio.  The e-mails were

ultimately received by SpotOption employees in Israel, where SpotOption had its headquarters. For example:

a.       On or about June 2, 2014, Defendant, using his "jared@davisinvestment.com" e-mail account, sent an e-mail to "Risk Management <risk@spotoption.com>" that referred to "optionmint 16312," a specific OptionMint customer.  Defendant wrote: "He is burying us.  Please do something with him."

b.       On or about February 19, 2014, an employee for Defendant wrote an e-mail to "Risk Management <risk@spotoption.com>," stating "Please look at user #15747 . . . . He's taking out positions for random amounts and killing us."  The employee copied Defendant to this email using Defendant's "jared@davisinvestment.com" account.

c.       On or about February 25, 2014, an employee for Defendant wrote an e-mail to "Risk Management <risk@spotoption.com>," stating "Please adjust risk for the following trader.  He is crushing us."  The employee copied Defendant to this email using Defendant's "jared@davisinvestment.com" account.

d.       On or about April 9, 2014, an employee for Defendant wrote an e-mail to "Risk Management <risk@spotoption.com>," stating "Can you please adjust risk for the below OptionMint user.  He is crushing us with this straddle strategy."  The employee copied Defendant to this email using Defendant's "jared@davisinvestment.com" account.

e.       On or about April 10, 2014, an employee for Defendant wrote an e-mail to "Risk Management <risk@spotoption.com>," as a follow-up to his April 9, 2014 e-mail.  The employee asked "[h]as this risk been changed yet.  This was sent yesterday but no reply back yet."  The employee again copied Defendant.  A SpotOption employee replied the same day, copying Defendant and stating "Thank you for contacting us.  We had changed

the status risk for the guy below.  It should be more aggressive and reducing his profits in

the soon [sic] future."

  f.  On or about April 21, 2014, an employee for Defendant wrote an e-mail to "Risk

Management <risk@spotoption.com>," stating "[t]his user is still crushing us even

though the risk was adjusted 6 days ago.  Can you please take another look immediately

and fix this ASAP."  The employee copied Defendant to this email.  A SpotOption

employee responded, copying Defendant and writing that the customer "lost 621$ in the

last 6 days . . . . Eventually, we believe the changes will do the work."

  g.  On or about November 4, 2014, an employee for Defendant wrote an e-mail to

"Risk Management <risk@spotoption.com>," stating "[p]lease adjust risk for OptionMint

user [xxxxxxx]@gmail.com.  Large trade amount and at a 76% win rate."  The employee

copied Defendant to this email using Defendant's "jared@davisinvestment.com" account.

15. *Victim Deposits Not Held.*  Defendant falsely represented to victims that they could

receive profits from their binary options trades without further disclosing that no money was held

to pay profits.  Defendant also failed to disclose that he spent the victim deposits as he received

them.  Defendant portrayed his scheme as a binary options brokerage and used the Internet

trading platforms to falsely represent to victims that they maintained funds in an individual

trading account.  In truth, Defendant never held victim money in any account, either to return to

the victim or to pay victim profits.

16. *"Broker" Qualifications.*  Defendant's employees falsely represented themselves as

"brokers" or "analysts" with investment experience who could recommend profitable binary

options trades.  Neither Defendant nor his employees disclosed to victims that the individual

"brokers" and "analysts" had no relevant experience or qualifications.

17.    *Payment of Profits.*  Defendant falsely represented to victims that they could withdraw money from their binary options accounts at any time and receive a payout or profits without further disclosing that victims would be required to provide unnecessary and burdensome documentation for closing the account.  These requirements would discourage victims from pursuing their withdrawal requests, resulting in continued trading and losses to the victim.  When Defendant would refund money to customers, he would do so in an effort to manipulate them. For example:

        a.      On or about February 19, 2014, in an e-mail to one of his employees, Defendant wrote "Yes send him $2580 back and rest of first WD to paypal.  Explain our procedure with one per week.  Do them both tomorrow to buy us another day in the week for risk to get him."

        b.      On or about February 20, 2014, in an e-mail to one of his employees, Defendant referred to customer 16312 and wrote "dont pay him anything else.  If he wins we cancel account for cancel abuse.  If he loses, we milk him."  The employee wrote back "Understood."

18.    *"Bonus Money."*  Defendant falsely represented to victims that they could use "bonus money" added to their accounts to trade and increase their profits.  Defendant enticed victims to deposit money into his binary options scheme by offering them "bonus money."  "Bonus money" was portrayed as additional funds added to the victim's actual funds on deposit that could then be used for binary options trades.  Adding "bonus money" to a victim's actual funds encouraged the victim to deposit more money and to make binary options trades in amounts larger than the victim might have made if using only the victim's actual money.  But victims would lose their own money first in any given trade and any remaining "bonus money" could not be withdrawn

unless it was "turned over," or doubled in value through successful trades, as many as thirty times.  Combined with other fraudulent and deceptive practices, it was nearly impossible to "turn over" bonus money the required number of times to receive a payout, a fact Defendant failed to disclose to investors.

19.     *"Risk Free," "Insured," and "Guaranteed" Trades.*  Defendant falsely represented to victims that they could make "risk free," "insured," or "guaranteed" binary options trades if the victim would deposit more money.

20.     Defendant solicited victims through Internet marketing campaigns and call centers. Defendant paid for Internet marketing campaigns that would attract potential investor leads with "get rich quick" promises.  Potential investors would submit their contact information to the Internet marketer who would pass it to Defendant.

21.     Defendant ran several call centers to solicit, or "convert," these leads into actual investors by convincing victims to deposit money in Defendant's binary options scheme.  Once "converted" to an actual investor, Defendant's call centers would "retain" these investors by continuing to solicit them for more and more deposits into the scheme.  For these purposes, Defendant operated call centers in Sandusky, Ohio (Erie Marketing, LLC), Costa Rica (Grandstream Marketing SRL), and Sint Maarten (Bluewater Marketing, N.V.).  The Sandusky, Ohio call center was located in the Northern District of Ohio, Western Division.

22.     When interacting with victims, Defendant and his call center employees used Defendant's various trade names for the scheme, including OptionMint, OptionKing, and OptionQueen.  Defendant's employees at these call centers used various forms of interstate wire communication to communicate with investors, including telephone, e-mail, text messaging, and wireless communications.

23.     To receive and launder victim deposits, Defendant enlisted foreign nationals who, under Defendant's direction, established an elaborate web of foreign corporations to conduct Defendant's binary options scheme overseas.  These foreign nationals acted strictly as nominees under Defendant's control so that Defendant could conceal his true ownership of the foreign entities and conceal the fact that the foreign entities were owned and controlled by a United States citizen.

24.     Defendant created these nominee entities in various foreign countries, including the United Kingdom, Belize, Anguilla, St. Vincent and the Grenadines, Costa Rica, and Sint Maarten.

25.     Defendant opened numerous foreign bank accounts in the names of these nominee entities.  Defendant did so in order to conceal from the foreign banks that the accounts were controlled by a United States citizen.  Defendant opened these bank accounts in the Cook Islands, Belize, and Poland, using foreign nominee entities named Binary Investments Global Limited, Kensington I.P. Limited, and Advanced Option Capital Limited.

26.     Defendant also used foreign nominee companies to open accounts with foreign payment processors to receive victim credit card payments and transfer them to the foreign bank accounts for later repatriation to the United States.  These foreign payment processors were located in Malta, Iceland, Israel, and the United Kingdom.

27.     Once a binary options victim charged a deposit to a credit card, the transaction was processed by a foreign credit card processor, which would deposit the funds into a foreign bank account as directed by Defendant.  Defendant would then use the funds to pay the expenses of the binary option scheme and his profits.  Defendant frequently repatriated the funds from the foreign bank accounts to his domestic accounts, including First National Bank of Bellevue,

account number x2768, in the name of Erie Marketing, LLC. From this account, Defendant paid his Sandusky, Ohio call center employees and other expenses. Repatriating these funds often occurred in amounts exceeding $10,000. On occasion, Defendant would also use currency obtained from the foreign accounts to pay expenses.

28.  The First National Bank of Bellevue was a "financial institution" within the meaning of Title 18, United States Code, Section 1956(c)(6)(A), in that it was an "insured bank" as defined in Section 3(h) of the Federal Deposit Insurance Act and Title 31, United States Code, Section 5312(a)(2)(A).

29.  PKO Bank Polski of Warsaw, Poland was a "financial institution" within the meaning of Title 18, United States Code, Section 1956(c)(6)(B), in that it was a "foreign bank" as defined in Section 1 of the International Banking Act of 1978.

30.  Fidelity National Title Insurance Company was a "financial institution" within the meaning of Title 18, United States Code, Section 1956(c)(6)(A), in that it was an "insurance company" within the meaning of Title 31, United States Code, Section 5312(a)(2)(M), and that it was "involved in real estate closings and settlements" within the meaning of Title 31, United States Code, Section 5312(a)(2)(U).

<u>COUNT 1</u>
(Wire Fraud Conspiracy, 18 U.S.C. § 1349)

The Grand Jury charges:

31.  The factual allegations from paragraphs 1 through 30 are incorporated here.

32.  From in or around April 2012 through in or around June 2016, in the Northern District of Ohio, Western Division, and elsewhere, Defendant JARED J. DAVIS, with other persons known and unknown to the Grand Jury, knowingly and intentionally conspired to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses,

representations, and promises, and for the purpose of executing the scheme and artifice to defraud and attempting to do so, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, and pictures, contrary to Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
(Wire Fraud, 18 U.S.C. § 1343)

The Grand Jury further charges:

33.     The factual allegations from paragraphs 1 through 30 are incorporated here.

34.     From in or around April 2012 through in or around June 2016, Defendant JARED J. DAVIS devised and intended to devise a scheme to defraud individual binary options investors and to obtain money and property from them by means of materially false and fraudulent pretenses, representations, and promises.

35.     For the purpose of executing and attempting to execute the scheme and artifice to defraud, Defendant transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, and pictures, to wit:  e-mail communications as described in subparagraphs 14.b through 14.g of this indictment between the Northern District of Ohio, Western Division and e-mail servers and recipients located outside the state of Ohio, all in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 3–6
(Wire Fraud, 18 U.S.C. § 1343)

The Grand Jury further charges:

36.     The factual allegations from paragraphs 1 through 30 are incorporated here.

37.     From in or around September 2014 through in or around June 2016, Defendant JARED J. DAVIS devised and intended to devise a scheme to defraud Victim 1, a victim known to the Grand Jury, and to obtain money and property from Victim 1 by means of materially false and fraudulent pretenses, representations, and promises.

38.     For the purpose of executing and attempting to execute the scheme and artifice to defraud, Defendant transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, and pictures between the Northern District of Ohio, Western Division and Illinois for the purpose of soliciting and encouraging Victim 1's further participation in the scheme to defraud, as follows:

| Count | Approx. Date | Description of Wire Communication |
|-------|-------------|-----------------------------------|
| 3 | October 9, 2015 | E-mail from an OptionMint "Senior Market Analyst" to Victim 1 explaining guaranteed binary options trades and attaching a chart showing insured investment rates |
| 4 | November 11, 2015 | E-mail from an OptionMint "Senior Market Analyst" to Victim 1 describing the "analyst's" move as a binary options broker from OptionMint to OptionKing |
| 5 | December 16, 2015 | E-mail from support@optionmint.com denying Victim 1's account withdrawal request because Victim 1's remaining balance "is bonus money which you have not converted into funds available for withdrawal." |
| 6 | December 17, 2015 | E-mail from an OptionMint "Senior Market Analyst" to Victim 1 blaming trading losses on the financial market and saying "I never traded your account very reckless it's the dam [sic] market . . . ." |

All in violation of Title 18, United States Code, Sections 1343 and 2.

COUNTS 7–8
(Wire Fraud, 18 U.S.C. § 1343)

The Grand Jury further charges:

39.     The factual allegations from paragraphs 1 through 30 are incorporated here.

40.     From in or around May 2015 through in or around June 2016, Defendant JARED J. DAVIS devised and intended to devise a scheme to defraud Victim 2, a victim known to the

Grand Jury, and to obtain money and property from Victim 2 by means of materially false and fraudulent pretenses, representations, and promises.

41.     For the purpose of executing and attempting to execute the scheme and artifice to defraud, Defendant transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, and pictures between the Northern District of Ohio, Western Division and Michigan for the purpose of soliciting and encouraging Victim 2's further participation in the scheme to defraud, as follows:

| Count | Approx. Date | Description of Wire Communication |
|-------|--------------|-----------------------------------|
| 7 | June 17, 2015 | E-mail from an OptionMint "Senior Market Analyst" to Victim 2 attaching wiring instructions for depositing funds in a Cook Islands bank account |
| 8 | October 12, 2015 | E-mail from an OptionMint "Senior Market Analyst" to Victim 2 explaining guaranteed binary options trades, noting "Your [sic] still guaranteed a % of your investment in profits each and every month." |

All in violation of Title 18, United States Code, Sections 1343 and 2.

COUNT 9–12
(Wire Fraud, 18 U.S.C. § 1343)

The Grand Jury further charges:

42.     The factual allegations from paragraphs 1 through 30 are incorporated here.

43.     From in or around January 2016 through in or around June 2016, Defendant JARED J. DAVIS devised and intended to devise a scheme to defraud Victim 3, a victim known to the Grand Jury, and to obtain money and property from Victim 3 by means of materially false and fraudulent pretenses, representations, and promises.

44.     For the purpose of executing and attempting to execute the scheme and artifice to defraud, Defendant transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, and pictures between the Northern

District of Ohio, Western Division and Massachusetts for the purpose of soliciting and encouraging Victim 3's further participation in the scheme to defraud, as follows:

| Count | Approx. Date | Description of Wire Communication |
|-------|--------------|-----------------------------------|
| 9 | January 19, 2016 | E-mail from an OptionKing "Senior Market Analyst" to Victim 3 attaching wire instructions for deposits into a Cook Islands bank account, noting "Very nice meeting you today!  I look forward to us working together!" |
| 10 | January 20, 2016 | E-mail from an OptionKing "Senior Market Analyst" to Victim 3 discussing account options, indicating "I look forward to working with you next week, remember to email me the wire receipt so that I can get the bonus in the account while awaiting the transfer." |
| 11 | February 2, 2016 | E-mail from an OptionKing "Senior Market Analyst" to Victim 3 indicating "Just send me the copy of the wire receipt once you get it squared away and then it's time to schedule our first trading day!" |
| 12 | February 9, 2016 | E-mail from an OptionKing "Senior Market Analyst" to Victim 3 discussing a withdrawal request and adding "I would like to start trading with you asap." |

All in violation of Title 18, United States Code, Sections 1343 and 2.

<u>COUNT 13</u>
(Money Laundering Conspiracy, 18 U.S.C. § 1956)

The Grand Jury further charges:

45.     The factual allegations from paragraphs 1 through 30 are incorporated here.

46.     From in or around April 2012 through in or around June 2016, in the Northern District of Ohio, Western Division, and elsewhere, Defendant JARED J. DAVIS, with other persons known and unknown to the Grand Jury, knowingly and intentionally conspired to:

　　　a.     transport, transmit, and transfer monetary instruments and funds from places outside the United States to and through places in the United States and from places in the United States to and through places outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1956(a)(2)(A); and

14

b.      engage and attempt to engage in monetary transactions by, through, or to a financial institution affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specific unlawful activity, to wit: wire fraud in violation of Title 18, United States Code, Section 1343, contrary to Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 14
(International Money Laundering, 18 U.S.C. § 1956(a)(2)(A))

The Grand Jury further charges:

47.     The factual allegations from paragraphs 1 through 30 are incorporated here.

48.     On or about October 28, 2014, in the Northern District of Ohio, Western Division and elsewhere, Defendant JARED J. DAVIS transported, transmitted, transferred, and attempted to transport, transmit, and transfer, monetary instruments and funds from a place outside the United States, that is a wire funds transfer for approximately $9,000 from Belize Bank International in Belize City, Belize, account number x2641 in the name of Binary Investments Global, Limited, to and through a place in the United States, that is First National Bank of Bellevue, in Bellevue, Ohio, account number x2768 in the name of Erie Marketing, LLC, with the intent to promote the carrying on of specified unlawful activity, that is wire fraud in violation of Title 18, United States Code, Section 1343, all in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## COUNT 15
(International Money Laundering, 18 U.S.C. § 1956(a)(2)(A))

The Grand Jury further charges:

49.     The factual allegations from paragraphs 1 through 30 are incorporated here.

50.     On or about June 3, 2015, in the Northern District of Ohio, Western Division and elsewhere, Defendant JARED J. DAVIS transported, transmitted, transferred, and attempted to transport, transmit, and transfer, monetary instruments and funds from a place outside the United States, that is a wire funds transfer for approximately $45,000 from Capital Security Bank in the Cook Islands, account number x4863 in the name of Kensington I.P., Limited, to and through a place in the United States, that is First National Bank of Bellevue, in Bellevue, Ohio, account number x2768 in the name of Erie Marketing, LLC, with the intent to promote the carrying on of specified unlawful activity, that is wire fraud in violation of Title 18, United States Code, Section 1343, all in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

<u>COUNT 16</u>
(Money Laundering, 18 U.S.C. § 1957)

The Grand Jury further charges:

51.     The factual allegations from paragraphs 1 through 30 are incorporated here.

52.     On or about February 18, 2016, in the Northern District of Ohio, Western Division, and elsewhere, Defendant JARED J. DAVIS knowingly engaged and attempted to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is a wire funds transfer in the amount of approximately $216,000 from PKO Bank Polski, account number x4446, in the name of Kensington I.P., Limited to Fidelity National Title of Sandusky, Ohio for the purchase of real property located in Sandusky, Ohio, such funds having been derived from a specified unlawful activity, that is wire fraud in violation of Title 18, United States Code, Section 1343, all in violation of Title 18, United States Codes, Sections 1957 and 2.

COUNT 17
(Money Laundering, 18 U.S.C. § 1957)

The Grand Jury further charges:

53.     The factual allegations from paragraphs 1 through 30 are incorporated here.

54.     On or about February 19, 2016, in the Northern District of Ohio, Western Division, and elsewhere, Defendant JARED J. DAVIS knowingly engaged and attempted to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is a wire funds transfer in the amount of approximately $100,000 from PKO Bank Polski, account number x3620, in the name of Advanced Option Capital, Limited to First National Bank of Bellevue, in Bellevue, Ohio, account number x2768 in the name of Erie Marketing, LLC, such funds having been derived from a specified unlawful activity, that is wire fraud in violation of Title 18, United States Code, Section 1343, all in violation of Title 18, United States Codes, Sections 1957 and 2

COUNT 18
(Obstruction of Justice, 18 U.S.C. § 1512(c)(1))

The Grand Jury further charges:

55.     The factual allegations of paragraphs 1 through 30 are incorporated here.

56.     On or about April 29, 2016, in the Northern District of Ohio, Western Division, and elsewhere, Defendant JARED J. DAVIS corruptly attempted to alter, destroy, mutilate, and conceal, records, documents, and other objects by deleting an e-mail account and its contents hosted by Google, Inc. and identified as jared@davisinvestment.com, with the intent to impair their integrity and availability for use in an official proceeding, to wit, a federal grand jury investigation in the Northern District of Ohio, Western Division, in violation of Title 18, United States Code, Sections 1512(c)(1) and 2.

## COUNT 19
### (Obstruction of Justice, 18 U.S.C. § 1512(c)(1))

The Grand Jury further charges:

57.     The factual allegations of paragraphs 1 through 30 are incorporated here.

58.     In or around April 2016, in the Northern District of Ohio, Western Division, and elsewhere, Defendant JARED J. DAVIS corruptly altered, destroyed, mutilated, and concealed, and corruptly attempted to do so, records, documents, and other objects by destroying a laptop computer containing an OptionMint database and disposing of the laptop computer and its contents in the Delaware River, with the intent to impair their integrity and availability for use in an official proceeding, to wit, a federal grand jury investigation in the Northern District of Ohio, Western Division, in violation of Title 18, United States Code, Sections 1512(c)(1) and 2.

## COUNT 20
### (Tax Evasion, 26 U.S.C. § 7201)

The Grand Jury further charges:

59.     The factual allegations from paragraphs 1 through 30 are incorporated here.

60.     During the calendar year 2014, Defendant JARED J. DAVIS, received taxable income upon which there was income tax due and owing to the United States of America.  Knowing the foregoing facts and failing to make an income tax return on or before April 15, 2015, as required by law, to any proper officer of the Internal Revenue Service, and to pay the income tax to the Internal Revenue Service, DAVIS, from on or about January 1, 2014 through on or about December 31, 2014, in the Northern District of Ohio, Western Division and elsewhere, willfully attempted to evade and defeat income tax due and owing by him to the United States of America, for the calendar year 2014, by committing the following affirmative acts, among others:

a.     using offshore bank accounts in nominee names to conceal the receipt, ownership, and control of taxable income, including the repatriation of that income to the Northern District of Ohio, Western Division;

b.     using a call center located in the Northern District of Ohio to direct investors to fund their binary options accounts via overseas credit card processors or wire transfers to overseas bank accounts controlled by DAVIS;

c.     failure to maintain business records reflecting distribution of profits; and

d.     preparing a false IRS Form W-8BEN-E declaring that the revenue of Welsh Investments Global, Limited was not related to a trade or business in the United States.

All in violation of Title 26, United States Code, Section 7201.

<u>COUNT 21</u>
(Tax Evasion, 26 U.S.C. § 7201)

The Grand Jury further charges:

61.    The factual allegations from paragraphs 1 through 30 are incorporated here.

62.    During the calendar year 2015, Defendant JARED J. DAVIS, received taxable income upon which there was income tax due and owing to the United States of America.  Knowing the foregoing facts and failing to make an income tax return on or before April 18, 2016, as required by law, to any proper officer of the Internal Revenue Service, and to pay the income tax to the Internal Revenue Service, DAVIS, from on or about January 1, 2015 through on or about December 31, 2015, in the Northern District of Ohio, Western Division and elsewhere, willfully attempted to evade and defeat income tax due and owing by him to the United States of America, for the calendar year 2015, by committing the following affirmative acts, among others:

    a.      using offshore bank accounts in nominee names to conceal the receipt, ownership, and control of taxable income, including the repatriation of that income to the Northern District of Ohio, Western Division;

    b.      using a call center located in the Northern District of Ohio to direct investors to fund their binary options accounts via overseas credit card processors or wire transfers to overseas bank accounts controlled by DAVIS; and

    c.      failure to maintain business records reflecting distribution of profits.

All in violation of Title 26, United States Code, Section 7201.

COUNT 22
(Tax Evasion, 26 U.S.C. § 7201)

The Grand Jury further charges:

63.    The factual allegations from paragraphs 1 through 30 are incorporated here.

64.    During the calendar year 2016, Defendant JARED J. DAVIS, received taxable income upon which there was income tax due and owing to the United States of America.  Knowing the foregoing facts and failing to make an income tax return on or before April 18, 2017, as required by law, to any proper officer of the Internal Revenue Service, and to pay the income tax to the Internal Revenue Service, DAVIS, from on or about January 1, 2016 through on or about December 31, 2016, in the Northern District of Ohio, Western Division and elsewhere, willfully attempted to evade and defeat income tax due and owing by him to the United States of America, for the calendar year 2016, by committing the following affirmative acts, among others:

    a.      using offshore bank accounts in nominee names to conceal the receipt, ownership, and control of taxable income, including the repatriation of that income to the Northern District of Ohio, Western Division;

b.      using a call center located in the Northern District of Ohio to direct investors to fund their binary options accounts via overseas credit card processors or wire transfers to overseas bank accounts controlled by DAVIS; and

c.      failure to maintain business records reflecting distribution of profits.

All in violation of Title 26, United States Code, Section 7201.

FORFEITURE SPECIFICATION

The Grand Jury further charges:

65.     For the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), and Title 28, United States Code, Section 2461(c), the allegations of Counts 1 through 19 are incorporated herein by reference.  As a result of the foregoing offenses, JARED J. DAVIS, the defendant herein, shall forfeit to the United States any property real or personal, which constitutes or is derived from proceeds traceable to a violation of the charges set forth herein; and/or any property, real or personal, involved in such offenses and any property traceable to such property, including but not limited to a money judgment.  If, as a result of any act or omission by Defendant, any property subject to forfeiture:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been comingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of Defendant up to the value of the forfeitable property described above.

A TRUE BILL.

Original document—Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.