# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO.: 3: 18 CR 225 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JACK ZOUHARY |
| vs. | ) | |
| | ) | |
| JARED J. DAVIS, | ) | **DEFENDANT'S RESPONSE** |
| | ) | **TO SENTENCING MEMORANDUM** |
| Defendant. | ) | **FILED BY THE UNITED STATES OF** |
| | ) | **AMERICA ON DECEMBER 29, 2022** |

Now comes the Defendant, Jared J. Davis, by and through undersigned counsel, Ian N. Friedman and Madelyn J. Grant, Friedman Nemecek & Long, L.L.C., and Benjamin C. Glassman, Squire Patton Boggs, and hereby submits Defendant's Response to the Sentencing Memorandum filed by the United States of America on December 29, 2022.

Respectfully submitted,

*/s/ Ian N. Friedman*  
IAN N. FRIEDMAN (0068630)  
MADELYN J. GRANT (0098165)  
Counsel for Defendant  
Friedman Nemecek & Long, L.L.C.  
1360 East 9th Street, Suite 650  
Cleveland, OH 44113  
P: (216) 928-7700  
E: inf@fanlegal.com  
E: mjg@fanlegal.com  

*/s/ Benjamin C. Glassman*  
BENJAMIN C. GLASSMAN (0077466)  
Counsel for Defendant  
Squire Patton Boggs (US) LLP  
201 E. Fourth Street, Suite 1900  
Cincinnati, Ohio 45202  
P: (513) 361-1248  
E: benjamin.glassman@squirepb.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum was filed by CM/ECF on the 9th day of January 2023, which will send a notification of such filing electronically to the following: Segev Phillips, Assistant United States Attorney, 801 Superior Avenue, Cleveland, Ohio 44113.

Respectfully submitted,

*/s/ Ian N. Friedman*
IAN N. FRIEDMAN
Counsel for Defendant

## **LAW AND ARGUMENT**

**I.  Mr. Davis Has and Will Continue to Fully Comply with the Financial Obligations of The Plea Agreement and Is Striving to Make Significant Payment Before Sentencing.**

The Government's Sentencing Memorandum stresses the importance of making the victims whole by way of restitution payments. The memorandum also discusses the need for fines as a mechanism to deter any similar misconduct by the defendant and others in the public. The parties do not dispute these principles, and that is why Mr. Davis fully intends to comply with the financial obligations of the plea agreements and has already made efforts to do so.

First, the Clerk of Court is presently holding $1,929,428.39, a significant percentage of which will be applied towards the amount owed and will entirely satisfy all the people identified as victims of Erie Marketing, LLC. Second, Mr. Davis is striving to gather funds to make further payment toward the financial obligations identified in the plea agreements. To that end, he anticipates paying an additional $1,100,000.00 toward those obligations in advance of sentencing and will do so as soon as possible following this filing. Finally, it is noteworthy that Davis & Pinchot Investments holds significant real estate assets, likely approaching (or even exceeding, depending on sale conditions) $2,000,000. Mr. Davis stands ready to effectuate the sale of these assets. He cannot yet do so, however, because that requires the concurrence of Mr. Pinchot. The Government has not charged Mr. Pinchot to date.[1] Assuming that the government does so, however, in the coming days, the sale of assets by Davis & Pinchot should bring to completion the

---

[1] The Government's sentencing memorandum advocates, without citation to authority, that the Court order the liquidation of certain of Mr. Davis's assets to satisfy his financial obligations. Such an order would be highly unusual. The legal authority on which the Government is relying in support of its advocacy of this course is, at best, unclear; it cites statutes requiring restitution and covering its own enforcement authority, not statutes authorizing or instructing the Court to order liquidation as part of sentencing. In any event, such an order is unnecessary given the posture of payments made before sentencing. The Court should therefore decline the Government's invitation to order the liquidation of Mr. Davis's identified assets.

extraordinary financial penalties contemplated by the plea agreements in this case to satisfy the interests of restitution, punishment, and deterrence.

The Government contends that pursuant to the Guidelines range and 18 U.S.C. §3553(a), a significant sentence is warranted to deter future conduct of this sort. However, as noted, the government also contends that the fines ordered in the amount of $300,000.00—the statutory maximum—and $4.5 million for Mr. Davis and Erie Marketing respectively, are intended to deter future similar conduct by Mr. Davis and others. Respectfully, Mr. Davis should not be penalized multiple times in multiple different ways for purposes of deterrence. The financial penalties imposed by the plea agreements in both matters are a significant deterrent factor, and it is simply unnecessary to impose additional sanctions on Mr. Davis for the repeated purpose of deterrence.

Ensuring full payment of restitution for Erie Marketing, LLC's victims and strenuous efforts to make large down payments on very significant fines are themselves bases warranting a downward variance, insofar as 18 U.S.C. § 3553(a) directs the Court to consider the needs for the sentence to accomplish restitution and the history and characteristics of the defendant. This is a case where restitution, significant fine, and probation (with all its attendant restrictions) are sufficient, but not greater than necessary, to accomplish the statutory purposes of sentencing.

## II. The Government's Tax Loss Calculation Is Incorrect.

The correct tax loss under USSG § 2T1.1 in this case is between $40,000 and $100,000, corresponding to offense level 14. This conservatively accounts for reasonably ascertainable deductions, as the guideline's application notes instruct. In advocating for a tax loss number that is an order of magnitude higher, the government "adopts the calculations as set forth in the attached affidavit by IRS SA Bradley Bierman." (R. 117, memo at 8.) That affidavit,[2] however, does not

---

[2] The document is actually a declaration, not an affidavit. Because the government's sentencing memorandum refers to it as an affidavit, however, this response uses the same word.

provide the evidence to support disallowance of the deductions that the agent himself identified, and does not consider any other deductions for which Mr. Davis provided documentation to the probation officer. The government's argument must therefore be rejected.

The Bierman affidavit identifies as deductible expenses of the binary-options brokerage payments to trading platforms and marketing, but it then urges the disallowance of those expenses under 26 U.S.C. § 162(c)(2). That section of the tax code provides that a deduction shall not be allowed "if the payment constitutes an illegal bribe, illegal kickback, or other illegal payment under any law of the United States…, which subjects the payor to a criminal penalty or the loss of license or privilege to engage in a trade or business." Further, § 162(c)(2) provides that the "burden of proof in respect of the issue" is on the government. *Id.*

The Bierman affidavit does not contend that payments to trading platforms or marketers constituted illegal bribes or kickbacks, but instead posits that they should be disallowed as "illegal payments" under 26 U.S.C. § 162(c)(2). There are at least two fundamental problems with this position—one legal and one factual—each of which independently forecloses the government's position.

First, the Bierman affidavit mistakenly applies § 162(c)(2) as a matter of law because it does not identify any payment that was itself illegal. The text of the statute requires that the payment itself be illegal to be disallowed. As one circuit court has explained: "Only if the payment is illegal under a generally enforced [federal] law is it nondeductible. Thus, while payments for illegal activities may be deductible, payments which are themselves illegal are not. The payment, not just the activity with which the payment is associated, must be illegal, to cause subsection 162(c)(2) to operate." *United States v. Standard*, No. 95-50069, 1996 WL 207157 (9th Cir. Apr. 26, 1996). Here, the Bierman affidavit does not identify any law making it illegal to pay for

software platforms or marketing generally. Nor could it because there is no such law. Therefore, the Bierman affidavit is incorrect as a matter of law in seeking to disallow what it concedes are ordinary and necessary business expenses under § 162(c)(2).

Second, even accepting its erroneous interpretation of "illegal payment," the Bierman affidavit fails as a factual matter on its own terms. The idea behind the Bierman affidavit's conception of "illegal payment" appears to be that the payments in question went to companies that were committing fraud—but the affidavit does not prove that proposition.

Regarding the trading platforms, the affidavit asserts that the "platforms themselves were fraudulent." Its support for that proposition is "[a]s explained in the plea agreements." The plea agreements, however, do not establish that the platforms were fraudulent, and the Bierman affidavit attaches nothing else.

Regarding marketing companies, the Bierman affidavit relies on a consent order in a civil case brought by the CFTC in the Middle District of Florida where one of the marketing companies agreed to an order enjoining and fining it for fraudulent practices "without admitting or denying the allegations of the Complaint or any findings or conclusions in this Consent Order, except as to jurisdiction and venue, which they admit." That is no evidence even against the marketing company in any other case—much less evidence for use in this criminal case. None of the parties to this case was a party to the Middle District of Florida civil case, and nothing in the consent order even references Mr. Davis or the business he ran with Mr. Pinchot. Nor does the Bierman affidavit otherwise attempt to trace any specific payment by Messrs. Pinchot and Davis's brokerage to any illegal use. Even on its own, incorrect legal theory, therefore, the Bierman affidavit does not show that the business expenses that it identifies should be disallowed.

The government gains no traction by also referencing the part of USSG cmt. n. 3 that

provides that "the court shall not account to payments to third parties made in a manner that encouraged or facilitated a separate violation of law (*e.g.*, 'under the table' payments made to employees or expenses incurred to obstruct justice)." First, as a factual matter, for the reasons stated in the immediately preceding paragraph, the Bierman affidavit simply does not provide proof that any particular payment to a trading platform or marketer was used by the recipient for a crime.

Second, the government likewise misstates the guideline commentary. What it prohibits is payments to third parties "made in a manner" that encouraged or facilitated a separate violation of law. The payments at issue here were made and recorded in the ordinary course of business. There is nothing in the manner of the payment that encouraged or facilitated a separate violation of law. Amendment 774, which created the relevant guidelines commentary, was adopted to resolve a circuit split in favor of allowing previously unclaimed deductions. The reason for exempting under-the-table payments, payments for obstruction, and others made in a manner that encouraged or facilitated a separate violation was the view that they "result in additional harm to the tax system and the legal system as a whole." Amendment 774, reason for amendment. But nothing about the manner of payments to the software platforms or marketers—even on the government's own theory, setting aside the proof problems—yielded some other harm to the tax system or hindered the enforcement of tax laws. The manner was merely a standard interbank wire transfer. Therefore, the government's argument also fails on the language of the application note.

Finally, Mr. Davis has presented documentation of other business expenses from accounts the government has not reviewed, which were also deductible. This documentation was from QuickBooks, drawn from bank feeds, and was prepared by a CPA. The government's sentencing memorandum does not dispute these figures (but says in a footnote that it is requesting details of

the expenses). A conservative tax treatment that accounts for all of this results in a tax loss of less than $100,000.[3] Mr. Davis remains prepared to offer the testimony of Chaise Kahlenbeck, CPA, with additional support, at the sentencing hearing to explain this tax treatment.[4]

Respectfully submitted,

| | |
|---|---|
| /s/ *Ian N. Friedman* | /s/ *Benjamin C. Glassman* |
| IAN N. FRIEDMAN (0068630) | BENJAMIN C. GLASSMAN (0077466) |
| MADELYN J. GRANT (0098165) | Counsel for Defendant |
| Counsel for Defendant | Squire Patton Boggs (US) LLP |
| Friedman Nemecek & Long, L.L.C. | 201 E. Fourth Street, Suite 1900 |
| 1360 East 9th Street, Suite 650 | Cincinnati, Ohio 45202 |
| Cleveland, OH 44113 | P: (513) 361-1248 |
| P: (216) 928-7700 | E: benjamin.glassman@squirepb.com |
| E: inf@fanlegal.com | |
| E: mjg@fanlegal.com | |

---

[3] That amount was identified as $83,902 in the opening sentencing memorandum. In correspondence between the parties following the filing of opening sentencing memoranda, however, the Government has questioned whether $55,000 of cash paid to Mr. Davis's wife pursuant to their separation agreement in 2016 is properly characterized as deductible alimony, since the separation agreement denominates that sum as a property settlement. The issue is arguable, but assuming that this amount should not be included, as the Government has suggested, that would change the 2016 tax loss figure from $35,230 to $44,988, resulting in a total tax loss for 2014, 2015, and 2016 of $93,660. Again, this is an extremely conservative tax treatment undertaken by Mr. Kahlenbeck at the direction of counsel.

[4] In its own supplemental sentencing memorandum, filed earlier today, the Government states that it has not received information from which it can assess deductions and asserts that Mr. Davis's records are not reliable. As discussed, the QuickBooks from which Mr. Kahlenbeck prepared draft returns were drawn on bank feeds, and his work papers have been provided. It is frankly unclear what more than Government is seeking. To the extent that the Government's complaint is that it has not been provided with evidence of payment of the sums identified in the separation agreement, evidence of that payment will be provided in advance of the sentencing hearing.